IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 4, 2016

## RONNIE HUGHES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 13-02386    Chris Craft, Judge

_____

**No. W2015-02131-CCA-R3-PC  -  Filed January 31, 2017**

_____

The Petitioner, Ronnie Hughes, appeals the dismissal of his petition for post-conviction relief by the Shelby County Criminal Court.  On appeal, the Petitioner argues that he received ineffective assistance of counsel and that his guilty plea was involuntary and unknowing.  Upon review, we affirm the judgment of the post-conviction court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

James E. Thomas (on appeal), and David S. Mays (at hearing for post-conviction relief), Memphis, Tennessee, for the Petitioner, Ronnie Hughes.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Chris Lareau, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

On May 16, 2013, the Petitioner was indicted by a Shelby County Grand Jury on one count of carjacking and one count of robbery in Case No. 13-02386.  On December 16, 2013, the Petitioner entered a guilty plea to one count of carjacking, and pursuant to a plea agreement, the State dismissed the remaining count of robbery.  As a Range II, Multiple Offender, the Petitioner received an effective sentence of fifteen years' incarceration at thirty-five percent.

**Guilty Plea Hearing.**  At the December 16, 2013 guilty plea hearing, the State summarized the underlying facts as follows:

On [October 14, 2012], Ms. Lachelle Thomas was driving her '89 Ford Aerostar van near the intersection of Poplar and Dunlap when she was flagged down by a male known to her as Buck. Buck asked Ms. Thomas for a ride. Ms. Thomas agreed to provide a ride for [five dollars] worth of gasoline. Buck got into the '89 Ford Aerostar van with [Ms.] Thomas. And after getting the gas while riding down Leath, Buck began to strike [Ms.] Thomas in the face. [Ms.] Thomas stopped the vehicle in the middle of the road, at which time Buck took [Ms.] Thomas' van and fled the scene. [Ms.] Thomas later went to the hospital and learned she sustained a broken jaw.

During the course of the investigation, Ronnie Hughes was developed as a suspect. Ms. Thomas was shown a six-person photographic lineup, at which time Ms. Thomas identified Mr. Hughes as Buck, the male that carjacked her of her Aerostar van. All these events occurred here in Shelby County.

The Petitioner's counsel, on behalf of the Petitioner, stipulated to the State's recitation of the facts. The court explained to the Petitioner the rights he would waive by pleading guilty, including his right to a jury trial, his right to confront witnesses, his right to compel or subpoena witnesses, his right to remain silent, and his right to an appeal. The Petitioner indicated that he understood these rights and the plea agreement. Then, the court asked the Petitioner the following series of questions:

COURT: Knowing all that, do you still wish to enter this plea of guilty?

PETITIONER: Yes, sir.

COURT: Is there anything else about this plea you don't understand? Anything you're confused about you want me to explain for you?

PETITIONER: No, sir.

COURT: Are you entering this plea freely and voluntarily, without any threats or pressures or promises?

PETITIONER: Yes, sir.

Upon concluding that the Petitioner's guilty plea was knowing and voluntary, the trial court accepted the Petitioner's guilty plea.

The Petitioner filed a pro se petition for post-conviction relief on June 12, 2014, alleging several grounds of ineffective assistance of counsel and that his guilty plea was involuntary and unknowing. After the appointment of counsel, an amended petition, which incorporated the Petitioner's pro se petition, was filed on October 10, 2014. The amended petition alleged, inter alia, that if "[t]rial [c]ounsel properly prepared, [the] Petitioner would not have felt the need to plead guilty and would have fought the charges."

**Post-Conviction Hearing.** At the August 6, 2015 post-conviction hearing, trial counsel testified that the Petitioner's wife retained him on August 26, 2013. Trial counsel testified that he opened a file for the Petitioner's case, but he did not provide a copy of the file to the Petitioner or to post-conviction counsel. Trial counsel did not file a discovery motion because he simply requested the discovery from the State. Trial counsel testified that he reviewed the discovery material with the Petitioner. Trial counsel recited the relevant facts of the Petitioner's case and agreed that the "the biggest weakness to [the Petitioner's] case or the biggest strength to the State's case" was the victim's testimony and the lack of corroborating evidence or witnesses. The Petitioner, who was fifty-five years old, had five prior felonies. If convicted at trial, he faced twenty to thirty years for the robbery charge and ten to fifteen years for the carjacking charge. Trial counsel acknowledged that the Petitioner faced an "effective life sentence." Trial counsel did not hire an investigator, but he interviewed the victim "at some point" and concluded that "what she said was - - it fit the script" and matched the statement she had given to police. When asked about whether trial counsel spoke with the Petitioner about obtaining an investigator, trial counsel said that the Petitioner did not have an alibi witness and that the Petitioner claimed he did not take the victim's van or hurt the victim. Trial counsel agreed that this case "relies on a he said, she said, on who's more believable." Trial counsel was "pretty sure" that he "looked up" the victim's record to determine if she had a criminal record. Trial counsel acknowledged that the victim was charged with falsely reporting a crime on August 15, 2012, which was before the Petitioner was charged in the current case.

Initially, trial counsel could not remember whether there were any inconsistencies between the statements in the incident report generated by the Memphis Police Department and the victim's statement about the robbery. After reviewing the victim's statements with post-conviction counsel, trial counsel acknowledged that there were some inconsistencies, but the "meat" of the statements was "pretty consistent." Trial counsel remembered talking with the Petitioner about the victim because the Petitioner

knew her personally but could not recall if they discussed the inconsistencies in the victim's statements. Trial counsel testified that he would never tell a client to plead guilty and that he was always willing to take a case to trial. Trial counsel was a "trial lawyer" but his clients had the final decision about whether to have a trial or plead guilty. After reviewing the Petitioner's case, trial counsel advised the Petitioner that he would thoroughly cross-examine the victim but that the Petitioner's criminal record would make it difficult to "tell [his] story." Furthermore, when asked if he ever told the Petitioner that his "goose is cooked," trial counsel stated "probably not."

Trial counsel acknowledged that he did not request a medical evaluation for the Petitioner because he was unaware that the Petitioner suffered from any mental health conditions or was taking any medication. Trial counsel stated that he should have "checked out" the Petitioner's mental state because it could have affected the Petitioner's ability to understand what he was doing. However, there was no indication that the Petitioner was under the influence of any medication or was suffering from any mental health condition.

The Petitioner testified that he was originally appointed a public defender but his wife hired trial counsel to represent him. Trial counsel never opened a file for his case or provided him with a copy. The Petitioner did not receive any discovery for his case, and trial counsel did not review the inconsistencies in the victim's statements with the Petitioner. The Petitioner testified that trial counsel asked the Petitioner for the discovery at the guilty plea hearing. Trial counsel also failed to file any motions for the Petitioner or to interview the victim. The Petitioner wanted trial counsel to hire an investigator because an investigator would discover that the Petitioner was being "lied on," but trial counsel refused to hire an investigator. Trial counsel said it would be a "waste of time to talk to [the victim]" because she would not change her statement.

The Petitioner testified that trial counsel did not discuss the strengths and weaknesses of the Petitioner's case and did not inform him that the State's case relied on the credibility of the victim. Rather, trial counsel told the Petitioner that his "goose was cooked because of [the Petitioner's] record" and that he should "cop out" because his record would "take [him] down." The Petitioner acknowledged that he had five prior felony convictions and that he was facing an effective life sentence if convicted at trial. However, he lacked confidence in trial counsel's ability to secure a favorable jury verdict and stated that he pled guilty to avoid spending "the rest of [his] life in jail." The Petitioner testified that trial counsel's only advice to the Petitioner was to plead guilty.

The Petitioner also testified that he had been diagnosed with depression and bipolar disorder. He had been taking Remeron, an antidepressant, for several weeks and had taken Remeron the day he entered his guilty plea. The Petitioner claimed that trial

counsel knew that he was on medication for depression but did not investigate the Petitioner's mental state before the guilty plea hearing. The Petitioner testified that he would have been a "little more courageous" if he were not taking the Remeron. Before the guilty plea hearing, the Petitioner was "timid and nervous" and "didn't want to spend [his] life in prison."

On cross-examination, the Petitioner stated that he wanted trial counsel to file a motion "for the witness statement" and investigate the victim and her boyfriend to prove they had a history of domestic violence. When asked if he received all of the discovery from his first attorney, the Petitioner testified that his public defender gave trial counsel discovery before the guilty plea hearing. The Petitioner reiterated that he wanted trial counsel to investigate the victim and that he did not have any alibi witnesses. Finally, the Petitioner testified that the Remeron made him "timid and nervous," but he knew what he was doing when he entered his guilty plea.

On October 5, 2015, after reviewing the allegations raised in both the pro se post-conviction petition and the amended post-conviction petition, the post-conviction court denied the Petitioner relief. The post-conviction court found that "no proof has been presented of any deficient performance of counsel or any prejudice to the [P]etitioner." Furthermore, the post-conviction court determined that there was no evidence that the Petitioner was forced to enter a guilty plea or that his medication "affected his ability to understand or enter his guilty plea." It is from this order that the Petitioner now timely appeals.

## ANALYSIS

On appeal, the Petitioner argues that trial counsel failed to properly investigate the Petitioner's case because trial counsel never interviewed the victim or reviewed the inconsistent statements of the victim with the Petitioner. The Petitioner also claims that his guilty plea was involuntary and unknowing because it was based on "incomplete information" and entered when he was taking prescription medication. The State contends that the Petitioner received effective assistance of counsel and that his guilty plea was voluntary and knowing. After further review of the record, we agree with the State.

We begin our review of these issues by acknowledging that post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

**I. Ineffective Assistance.** In Vaughn, the Tennessee Supreme Court repeated well-settled principles applicable to claims of ineffective assistance of counsel:

The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [Petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, the petitioner must show that, but for counsel's errors, he would not have entered his guilty plea and would have proceeded to trial. Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

The Petitioner contends that trial counsel failed to investigate his case. Specifically, the Petitioner claims that trial counsel never "spoke to the alleged victim, reviewed the inconsistent statements in this case, or ever brought these inconsistences to the . . . prosecution." At the post-conviction hearing, trial counsel testified that he spoke to the victim "at some point" and that the content of that conversation matched her previous statements. Trial counsel told the Petitioner that there were some inconsistencies with the victim's two statements but that the "meat" of her statements was consistent. Trial counsel did not hire an investigator because after speaking with the victim and the Petitioner, trial counsel did not believe an investigator would help the Petitioner.

The post-conviction court credited trial counsel's testimony and found that the Petitioner did not provide any additional witness "[that] would have been favorable to the [P]etitioner, that might have been uncovered by a broader investigation." Moreover, the Petitioner testified that he did not have an alibi witness to account for his whereabouts and only asked trial counsel to investigate the victim, which is exactly what trial counsel did. There is no evidence that trial counsel failed to investigate the Petitioner's case or

speak with the victim about her statements to police. Accordingly, we agree with the post-conviction court and conclude that the Petitioner has failed to establish deficient performance or prejudice in this regard. Therefore, he is not entitled to relief.

**II. Guilty Plea.** Next, the Petitioner contends that trial counsel's failure to investigate his case "before advising [the Petitioner] to plead guilty" renders his guilty plea unknowing and involuntary. Specifically, the Petitioner argues that "if a defendant is ignorant to any defenses, or bases his decision to plead guilty on incomplete information because of an attorney's failure to properly investigate . . . [the guilty plea] cannot be . . . voluntary." Furthermore, the Petitioner claims that trial counsel told him to plead guilty because his record would "take him down." Finally, the Petitioner vaguely alleges that trial counsel should have investigated the Petitioner's mental state before entering his guilty plea.

The validity of a guilty plea is a mixed question of law and fact that is reviewed de novo. Lane, 316 S.W.3d at 562. To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. Id. (citing State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977); North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady v. United States, 397 U.S. 742, 747 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969)). "[T]he record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea[.]" Mackey, 553 S.W.2d at 340; see Tenn. R. Crim. P. 11(b)(1). When determining whether a guilty plea was knowingly, voluntarily, and intelligently entered, the court must consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Lane, 316 S.W.3d at 562 (quoting Grindstaff, 297 S.W.3d at 218). If a guilty plea is not knowingly, voluntarily, and intelligently entered, then the defendant has been denied due process, and the guilty plea is void. Id. (citations omitted).

A plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . '" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). In determining whether a guilty plea is voluntarily and intelligently entered, a trial court must look at a number of factors, which include the following:

> 1) the defendant's relative intelligence; 2) the defendant's familiarity with criminal proceedings; 3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; 4) the advice of counsel and the court about the charges and the penalty to be imposed; and 5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

<u>Howell v. State</u>, 185 S.W.3d 319, 330-31 (Tenn. 2006) (citing <u>Blankenship</u>, 858 S.W.2d at 904).

We have already established that trial counsel provided effective assistance of counsel to the Petitioner in this case. Thus, we reject the Petitioner's claim that his guilty plea was involuntary and unknowing based on trial counsel's lack of preparation. The Petitioner's second claim is that trial counsel forced the Petitioner to plead guilty. Trial counsel testified that he told the Petitioner that his "biggest weakness probably was him not telling his story." However, trial counsel testified that he was a "trial lawyer" and would never advise a client to plead guilty. The post-conviction court determined that "explaining the realities of the [P]etitioner's situation . . . did not 'coerce' the [P]etitioner into entering a guilty plea" and that trial counsel would have been "derelict in his duty had he not done so." The post-conviction court further determined that trial counsel was credible and did not force the Petitioner to plead guilty. <u>See</u> <u>Vaughn</u>, 202 S.W.3d at 115 (Tenn. 2006). The record supports the determination of the post-conviction court. The Petitioner is not entitled to relief on this issue.

Finally, the Petitioner appears to argue that trial counsel failed to investigate the Petitioner's mental state and that the Petitioner's medication affected his decision to enter a guilty plea. At the post-conviction hearing, trial counsel could not recall whether the Petitioner suffered from any mental health condition. However, the Petitioner testified that he told trial counsel that he was prescribed medication for depression but not for bipolar disorder. The record shows that the Petitioner was prescribed medication for depression. The post-conviction court found that the Petitioner failed to provide any "proof that this medicine in any way affected his ability to understand or enter his guilty plea."

Once again, the record supports the determination of the post-conviction court. Although the Petitioner briefly explained at the post-conviction hearing that he would have been "a little more courageous" if he was not taking Remeron, he failed to provide any medical testimony to support his claim. <u>See</u> <u>Darrell Wayne Bumpus v. State</u>, No. M2010-00222-CCA-R3-PC, 2010 WL 5140673, at *8 (Tenn. Crim. App. Dec. 14, 2010) (holding that "bare allegations, unsupported by medical testimony, about the use of psychiatric drugs [were] insufficient to support a claim that [a] guilty plea was not knowingly and voluntarily entered"). Moreover, the Petitioner testified at the post-conviction hearing that he "knew what [he] was doing" when he entered his guilty plea. Finally, the Petitioner's brief fails to explain how the Petitioner's medication affected his mental state when he entered his guilty plea. The Petitioner has failed to establish that he entered an unknowing and involuntary guilty plea. He is not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE